S. HOWES CO. ′v. HOWES GRAIN–CLEANER CO. et al.

(Supreme Court, Appellate Division, Fourth Department.  June 12, 1897.)

USE OF CORPORATE NAME—INJUNCTION.
> The S. Howes Co. was organized in January, 1895; the Howes Grain-Cleaner Co. in February, 1896, the latter being named for its president, and having a considerable capital invested in business.  Both companies manufactured the same class of machinery.  *Held,* that the latter company should be enjoined from using its corporate name.  Green and Follett, JJ., dissenting, on the ground that as no fraud or deception of customers was shown, and all the equities of the complaint were denied by the answer, no preliminary injunction should be granted.

Appeal from trial term.

Action by the S. Howes Company against the Howes Grain-Cleaner Company and others.  From an order granting an injunction, defendant company appeals.  Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George E. Towne, for appellant.
Norris Morey, for respondent.

PER CURIAM.  Order affirmed, with $10 costs and disbursements.

GREEN, J. (dissenting).  Plaintiff and defendant are domestic corporations.  The former was organized in January, 1895; the latter in February, 1896; and both are engaged in the manufacture and sale of mill and grain-cleaning machinery, at Silver Creek, in the county of Chautauqua.  Charles N. Howes is the president of the defendant, and has been since its organization.  It was organized with a capital stock of $100,000, $63,300 of which had been actually paid in and

invested in the business before the commencement of this action and the service of the injunction order herein, on December 31, 1896. At that time it had in its employ 32 mechanics and other employés, and, in addition thereto, 10 salaried employés, whose annual salaries aggregated $12,580, and was then doing a large business in manufacturing and selling grain-cleaning machinery, at the above-named place. No contract relations exist between any of the members of the defendant corporation and the plaintiff. Charles N. Howes, the president of the defendant, had been employed and engaged in the business of manufacturing grain-cleaning machinery since 1871, and, at the time of the formation of the defendant company, had an extensive acquaintance with millers and mill machinery men in all parts of the United States. Defendant was organized openly, and in the usual manner, and since such organization its business has been conducted in the same way, and no protest against the use of its corporate name was made until September, 1896, and no action was instituted by the plaintiff to restrain such use until this action, which was commenced December 31, 1896. It is not claimed that there has been an infringement of a trade-mark. The plaintiff's product has always been designated by the name "Eureka," and the defendant's by the name "Invincible." The claim of the plaintiff is that the defendant, by its acts, in its organization and in the subsequent prosecution of its business, has invaded the rights of plaintiff, and exceeded the boundaries of fair competition, and that the name assumed by the defendant as its corporate name so nearly resembles the name of plaintiff that it is calculated to deceive or produce confusion in the mind of the public, and especially in the minds of the present and prospective customers of plaintiff. In the absence of fraud or dishonesty on the part of the defendant, the user by the defendant of its own corporate name involves no misstatement of fact, and is not an infringement upon the rights of the plaintiff. "No man can have any right to represent his goods as the goods of another person, but in applications of this kind it must be made out that the defendant is selling his own goods as the goods of another. Where a person is selling goods under a particular name, and another person, not having that name, is using it, it may be presumed that he so uses it to represent the goods sold by himself as the goods of the person whose name he uses; but where the defendant sells goods in his own name, and it happens that the plaintiff has the same name, it does not follow that the defendant is selling his goods as the goods of the plaintiff. It is a question of evidence in each case whether there is false representation or not." Burgess v. Burgess, 3 De Gex, M. & G. 896. In the case of Turton v. Turton, 42 Ch. Div. 128, it was held that the plaintiffs, who carried on business under the style of Thomas Turton & Sons, were not entitled to restrain the defendants, a partnership firm, consisting of John Turton and his two sons, from carrying on a business of a similar nature, under the style of "John Turton & Sons"; and that, in the absence of fraud or dishonesty, the defendant company was entitled to use this name, even though it might be possible or even probable that the public might be occasionally misled by the similarity of names. It seems to have been established by numerous deci-

sions that if a person having the same name as another is carrying on the same business, and by the name adopted as his business nomenclature, that statement being the simple truth, he is doing no wrong, and the court is not justified in restraining him from transacting business under such circumstances.

Charles N. Howes is the president of the defendant, and had a right to use his own name as a part of the business name of the defendant, unless it be clearly shown that, by such use, he was seeking to avail himself of the business reputation or standing of the plaintiff, or by such means to impose upon the public, including the customers of the plaintiff, and cause them to believe that the product of defendant was the product of the plaintiff. This rule applied with equal force to the use of the words "grain cleaner." Those words truthfully indicate the business of the defendant. They are the only words which would truthfully express that business. They are general and descriptive terms, universally recognized and applied to the kind of machines manufactured by the defendant. The plaintiff certainly is not entitled to the exclusive use of those two words. Others may employ them with as much truth as the plaintiff, in designating their business. The plaintiff is engaged in the manufacture of grain cleaners, it is true; but it does not use those words in its corporate name. Its chief objection is to the name "Howes" in the name assumed by defendant. The defendant, having a right to transact the business of manufacturing grain-cleaning machinery, has the right to use an appropriate name, and cannot be required to invent a new one. "The cogency of this reasoning is only to be affected by considerations which would lead to a conclusion that the similarity between the titles of the two corporations was such as to mislead the public or produce confusion." In re United States Mortg. Co., 83 Hun, 573, 32 N. Y. Supp. 11.

This was the situation which confronted the learned justice who granted this order: It became incumbent upon him to compare the two names, to examine the complaint and answer and the affidavits of the respective parties, and decide whether the similarity between the titles of the two corporations would mislead the public or produce confusion. The decision of the learned justice was favorable to the contention of the plaintiff. A critical examination of the record in this case impels me to a different conclusion from that reached by the special term. The answer denies explicitly and positively the grounds alleged in the complaint, on which the equitable claim of the plaintiff is based. The allegations of the complaint, the statements contained in the affidavits of the plaintiff upon which it founds its claim for injunctive relief, are fully and fairly met by the answer and opposing affidavits of the defendant; and the right of this plaintiff to have a final judgment against this defendant is not so clear and transparent as to entitle it, at this time, to injunctive relief. It has not made it appear that the danger is so great, or that the apprehended mischief is so formidable, that the court would be authorized to summarily close the business of this defendant. The greatest caution under such circumstances as here exist should be exercised by the court in granting such a remedy. Here, by the order of the court,

the great business of the defendant is practically stopped, and must necessarily be seriously impaired by this forced cessation. The defendant was allowed to transact its business from February to the latter part of the following December, before the plaintiff commenced this action. The equities alleged by plaintiff as entitling it to equitable protection against the defendant using its corporate name, and transacting its business under the same, are denied by this defendant; yet the court has given to plaintiff all the relief the latter could obtain upon final judgment after trial of the issues raised by the pleadings. Under the conditions existing here, we are of the opinion that the exercise of injunctive relief should have been denied until the rights of the parties are fully ascertained by a trial in open court, and every opportunity given to this defendant to convince the mind of the court that this extreme remedy should not be granted.

The order appealed from should be reversed, and the temporary injunction order vacated, with costs and disbursements.

FOLLETT, J. I concur. A cause of action is not stated in the complaint. Besides, this court held in the Warsaw Waterworks Case (40 N. Y. Supp. 28) that, all the equities of the complaint being denied in the answer, an injunction suspending the business of the defendant should not be granted pending the action. That rule is an old one.